The Honorable Judges of the United States Court of Appeals in and for the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are acknowledged to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for this Good morning, Your Honor. Good morning, Mr. Counsel. My name is – may it please the Court – my name is Ryan Levitt, myself along with Damon Cherones represent Mr. Lebeau in this appeal. On his behalf, we've raised three independent issues before assessing their cumulative effect we submit require this Court to vacate and remand for a new trial. We've also raised a separate issue regarding his sentencing Strickland claim regarding the restitution order that in the alternative, I submit, requires this Court to remand for resentencing. And I will start with – I want to start with the restitution issue, and I specifically want to start by flagging a point we fronted in our brief, and that is that both Counsel and Mr. Lebeau are aware of this Court's standard admonitions regarding bringing Strickland claims on direct appeal. That is not something we are unaware of. And I know also that the fact – maybe admonitions is even too light of a word, but because – It may be. This is, I think, a unique case given that it's a Strickland claim regarding the restitution order. And as the case law we cited I think shows, restitution orders don't go to one's liberty and thus are not cognizable in a 2255 habeas petition. But can I just ask you, I mean, the other reason I thought you might have been doing this as an ineffectiveness of Counsel is very simply because Mr. Lebeau agreed to the total loss figure of $1,016,000 and the breakdown $789,000 to Amcor and the rest of the Palmquists. And so that places a huge barrier in your way. Now, if you're saying Counsel shouldn't have allowed him to – shouldn't have signified that issue. But the natural question is, you know, Counsel may have advised Mr. Lebeau to agree to this because that's where the facts were. Counsel may have thought that it was frivolous to approach it otherwise. And, you know, it's a holistic process for the lawyer. So maybe you can talk about that a little bit. Of course. I'll start with the waiver question. I think – I know as a lawyer I'm supposed to be long-winded. But I think the answer is simple in that you can't waive constitutional claims as a defendant at a sentencing hearing. But why not? People waive things all the time that are constitutional claims. If you – there's a number of cases we cited in our reply brief talking about different aspects or issues that come up in the course of a sentencing hearing, including in plea agreements where people expressly waive the right to bring certain challenges to the plea agreement. But when it's raised in terms of a stricken claim, that's something that the court is always going to get passed. Well, that's a different theory, right? Because if the action was undertaken without the effective assistance of counsel to which you're entitled under the Sixth Amendment, then that really undermines everything. And so I understand that part of the theory. But if – the reason we so for example in the state courts of Wisconsin, there's no way to probe counsel's thinking. And if you just look at it on the surface, I mean, it doesn't strike me as the kind of thing that you'd have to be an incompetent lawyer to advise a client to do. I understand, Your Honor. And I wanted to come back to one of the first things you said. Well, about the – I just wanted to point out that restitution, of course, you had brought up the loss amount and whether or not there was – whether it was strategic or something along those lines in not making an objection to the loss amount. There's no challenge – there was no challenge then and there's no challenge now to the loss amount. We're just talking about restitution. And the case we specifically cited – and the argument flows from this case – Litos and specifically whether or not a bank or lender or some other entity is properly considered a victim within the meaning of the MRVA. So it's separate and apart from loss. But to your most recent point, I think it's fair to say that there's no – there was no objection to the restitution. That's the whole basis for the deficient performance argument we're making. And there's certainly nothing in the record in and of itself that would establish any sort error. What we tried to do and I think successfully – I would submit successfully did to demonstrate that point is we supplemented the record with the co-schemers – the alleged co-schemer who was tried and convicted in a separate case, his sentencing here. Right. So your theory is because Judge St. Eve did think that there was some reason that the bank wasn't entitled to restitution, perhaps this judge would have thought the same thing. I have to say maybe yes, maybe no. The judges are entitled to come to different conclusions. And my own sense of the record in Litos is that it's a far cry from the record here. Well, I'd respond with two points. The first is that, yes, Judge St. Eve did make that finding. And part of the reason she made the finding was because at Schreyer, the alleged co-schemer sentencing hearing, the government in essence conceded the point. They specifically called Litos a difficult decision to reconcile, right? They made a number of other – Isn't that a legal conclusion though? We can read Litos for ourselves. Of course. But when they say reconcile, they mean reconcile with the facts in the loan-ed issue here. And I want to be clear too about the fact that this is absolutely the same exact scheme. I mean, this is as close as we can get to a Petri dish of a parallel proceeding and wondering what would have happened instead of being left guessing, generally speaking, about whether or not there's prejudice. I think the fact that there's been a finding – and what I would argue is a concession from the government in a separate proceeding that, yes, this restitution order was wrong or incorrect is about as close as we come to being near certain. Of course, under Strickland, we don't have to be near certain, right? We just have to find that there's a reasonable probability that the defendant was prejudiced. And I think that this certainly establishes it. And there are a lot of facts that were put on the record in Schleyer's sentencing hearing that do go to that point. But I wanted to step back and just be clear too about what I was saying. I mean, this is – I just want to highlight that this is – even though it was a separate case, this is the lawyer from the alleged scheme. It was the same loan, the same modifications to the loan, the same alleged misrepresentations. I couldn't answer why they were tried in separate cases. That's for other reasons, presumably, and it's neither here or there. But it was the exact same scheme. In one instance, there was an objection made, and in another, there wasn't. But, you know, I'll just throw out one difference between Amcor and the bank and Litos, which is that these forbearance agreements are accompanied by payments of significant amounts of money. Now, ill-gotten money, as it turns out. But I'm not sure the bank had any reason to know that. So the bank is lulled along here into thinking that these people just need more time. They need forbearance. Certainly. I would just add that, again, the government didn't make any such arguments and agreed that Amcor was not blameless in terms of their actions and what happened. And going back to the facts of the matter, the bank here, despite the payments in order to gain forbearance and other alleged misrepresentations, essentially went undisputed at Schleyer's sentencing hearing that Mr. Lebeau was deep in debt. The bank knew that in 2003, the year before they originally issued the loan, Brian Bodie, the co-defendant, had only paid $1,000 in income taxes and actually declared a $400,000 loss. Over the next two years, they knew his financial condition worsened and actually that there was $700,000 in liens and a huge increase in the interest expenses that were forthcoming on the loan. That was all before the loan started falling behind. And as it did fall further behind and further behind, the bank then ignored the advice of its own lawyers and it did allow the forbearance, despite what its lawyers told it, and it knew that Mr. Lebeau had declared bankruptcy, that Mr. Bodie had an additional $183,000 in debt, and it also declined an offer to mitigate the loss and purchased for someone else to purchase the collateral for $600,000. In any event, despite all of that, I again would come back to the standard under Strickland and specifically prejudice and that's if we had a new sentencing hearing, I can't say for certain what Judge Gettleman would do in that instance, but I don't have to. We just have to show that there's a reasonable probability. And I think given Judge Sineve's finding and also the fact that there was, in essence, a concession from the government that that standard is met and we've made out a Strickland claim. Okay. Well, you said you wanted to save five minutes for rebuttal, which you've already used some of. I will save the rest for you. Mr. Gutierrez. May it please the Court. I'd like to argue on behalf of Brian Bodie that, first of all, he was not a debtor. He was the some three or four days prior to the expiration of the statute of limitations. A true bill was returned and the initial indictment was brought before the Court. Unfortunately, on the eve of trial, we learned that the government filed a motion and they couched it in terms of, in an abundance of caution, we're going to front this to the Court. And what they fronted to the whether intentionally or inadvertently or mistakenly, they had presented to the grand jury a document suggesting that Mr. Bodie's personal financial statements were false. Well, as it turned out, those personal financial statements were amended prior to green lighting the loan, the original loan. This is all about his wife owning the, having the interest. That's correct. That's correct. And the reason that that was purportedly presented to the grand jury as true, which later turned out to be not true, was because Amcor Bank had been in receivership and the new receiver had somehow mistakenly turned over that document purporting to be the actual personal financial statements of Mr. Bodie. So the long and the short of it is, Your Honor, that I believe that this Court and the Court below had no jurisdiction over this case because the relation back theory under 3293-2 says, yeah, if there's a mistake or something inadvertent or something that could be corrected, the government has six months to bring a superseding indictment. And they did bring a superseding indictment. That was brought in. They argued, well, we need more time to see what the superseding indictment is about. And as you know, in the superseding indictment, they use information that did meet the statute of limitations moving forward. Well, yeah, that's what confused me about this argument because the superseding indictment focuses on Mr. Bodie's role in the forbearance agreements, which is within the 10-year window. And I don't see where, for Mr. Bodie as opposed to Mr. Lebeau, I don't see where this is reaching back inappropriately at all. Well, because if it was a superseding— Why do we care about these personal financial statements when we're looking at the forbearance agreements? Because the forbearance agreement relates back to a loan that was not appropriate to bring in an action against Mr. Bodie to begin with. But there was something independently wrong with the forbearance agreements, I think, is the government's theory. And they are agreements, right? They're agreements, but they are forbearance agreements that he acted as the guarantor. And there's no issue that, as the guarantor to the original loan agreement, the forbearance agreement had its own problems. But you can't bring that as a superseding indictment. If it can stand on its own, then the government was required to bring a separate indictment, try it separately, or even if they didn't want to try it separately, at least couch it in terms of, this is no longer a superseding indictment. This is a completely new indictment. And to relate back to the old issues of what had happened prior, I think it put Mr. Bodie in a disadvantage to be tried together with Mr. Lebeau. So that's your objection, then, to the fact that it's a superseding indictment, it still involves both of them? That's correct. So it's really—but there's a lot of discretion that the government gets about deciding to move forward with joint trials, et cetera. Well, then, Judge, and if that's the case, then they could wait until the last minute on every single case, present whatever evidence they need to save their clock, and then bring a superseding indictment, because that's exactly what happened here. But the question is, is there anything in this superseding indictment that can't be charged against Mr. Bodie? And I don't see where there is. I mean, he can defend, of course. They refer to the original bank loan as part and parcel to these new allegations. Well, it's a factual underpinning, right? It's a factual underpinning, that's correct. But as a superseding indictment, it has an imprimatur that it was part of the original bad loan. And quite frankly, there is no original bank loan fraud when it comes to Mr. Bodie. So anything that you add on in a superseding indictment is surplusage, as far as I'm concerned, and the court should be concerned about that. Even if he made false statements in violation of 1014 in the forbearance agreements? I mean, I know you have merits defenses to that. That's a whole different question, though. That's correct, Judge. We're just concentrating on this. And for that purpose, I have to agree with you that there is false statements made. I'm not arguing for that purpose. I'm reserving that under the sufficiency grounds. But what I'm saying is I think that the government is unfairly being rewarded in presenting a document, original document that was false, should have known to be false, to the grand jury. We don't know how the grand jury would have fallen. Say, if the grand jury had 10 items, and this last one item is the one that kicked it off of their table, we don't- I'm going to just wonder whether it's fair to say they knew this was false. It seems to me they may have been mistaken about who actually controlled, I forget what it was, but the wife's asset. But people, I mean, this is something people have to sort out as you learn about a case. Sometimes people co-mingle things with their partners, and sometimes they don't. That's correct, Judge, but they waited until the back was- I know. It was on the eve of trial. I'm aware of that. And to say, okay, well, they have broad discretion. They can relate back anything, even false statements to a grand jury. That's basically, if you affirm their theory of the case, that the court had jurisdiction over this, then it sends kind of a bad message to give them that much discretion. But do you have any reason to imagine that the timing of this was the product of bad faith? Is there any indication that it was the product of good faith? Well, I mean, we normally would assume that as our background assumption until somebody told us otherwise. I mean, I don't walk in and assume that the government is always lying. I mean- Well, neither do I, Judge. No, I hope not. And I have deep respect for Mr. Kartick, and I'm not saying that he had bad faith in presenting bad evidence. And to their credit, they did front the fact that this was bad evidence, and that's how they had the original indictment returned. I get that. But to move forward to a trial on a superseding indictment for Mr. Bode, where it should have been a completely different indictment, that it was not part and parcel to his statements as funding the original loan and greenlighting the original loan, yet that's what it kept coming back to. Well, we know that that wasn't a false statement. So we have false statements to various other actors. We have the underlying premise that Mr. Bode was the one who was actually making payments, that he was out-of-pocket $250,000. So it's not just your regular false statements. It's somebody who actually has skin in this game. You know, oftentimes in deciding these issues, we look to see who has actual skin in the game, who has actual material to lose other than their good name or their good reputation. In this case, Mr. Bode paid $250,000 out of his own pocket to try to keep this forbearance agreement moving forward. And to say that, well, because the original loan was fraudulent and those statements, even though the personal financial statements of Mr. Bode turned out to be accurate, that nonetheless, to save this loan, these people went—by these people, I mean the two defendants—went ahead and conducted themselves improperly post hoc. But a lot of your argument seems to depend on an assumption that when all was said and done, Mr. Bode was an innocent participant in all of this. And of course, as we alluded to a few minutes ago, the jury found otherwise. The jury found that Mr. Bode was, in fact, engaged in this scheme to defraud and it relies on evidence such as his testimony about the rezoning in Aurora. It relies on other evidence, his knowledge of these communications with the lawyer. So, I mean, can you—if the verdict stands on a sufficiency ground, I mean, these are just charges that the government had to prove. They're not just charges, Judge. They were part of a superseding indictment that related back to the original fraud against Amcor Bank. But if we decide that the superseding indictments stand on zone 2 feet, then we're left with your argument that there's somehow a difference between a superseding indictment and a brand-new indictment, even if they're both comfortably within the statute of limitations. Usually, you worry about superseding indictments when you've got to relate back to save a statute, but I don't see that you have to do that here. Well, Judge, as you know, my argument is a little more nuanced than that. Okay. And the nuance is, if you have two people who are moving forward under the same superseding indictment and one of them is actually saved in relating back on the original crime, how does that not spill over to Mr. Bode? How is that humanly possible not to spill over to Mr. Bode? Thank you, Judge. I'm going to reserve my time. All right. Thank you so much. Mr. Rahman? Good morning, Your Honors. May it please the Court, I am Karthik Rahman and I represent the United States in this appeal. I'm going to start with what we just heard from Mr. Bode's very briefly. Mr. Bode is incorrect that the superseding indictment was time-barred. All six counts that charged Mr. Bode in the superseding indictment alleged executions that were within the 10-year statute of limitations. Chief Judge Wood referred to it as comfortably within the statute. That is entirely correct. That is what happened here. So his theory seems to be that you've leveraged the superseding indictment in a way that permitted you to conduct a joint trial of Mr. Lebeau and Mr. Bode and that you couldn't have done that somehow if you had instead just gone out and gotten a new indictment exclusively against Mr. Bode. If I understand his argument correct, I think it's incorrect. First and foremost, Your Honor, you'll recognize that there were very similar charges brought in the original indictment. It was streamlined after the return of the superseding indictment. The charges became narrower, not more expansive. The charges with respect to Mr. Bode, the earliest crime that he was charged with was the July 21, 2006 letter to the bank that was in count six, which was comfortably within the 10-year statute of limitations. The superseding indictment was returned on June 29, 2016. So that's the earliest crime Mr. Bode was charged with in the superseding indictment. Moving on with respect to the point about abuse in the grand jury, first of all, there's no evidence in the record that there was any abuse in the grand jury. Any issues were corrected because the case was presented to a different grand jury almost two years later. Your Honor had asked, and I think Mr. Bode had suggested, counsel had suggested that the government knew it was false. The government did not. In fact, the record indicates that it was literally before the trial that was scheduled on the original indictment that an amended authority of Amcor Bank was discovered in the file of Amcor's lawyer. And so to avoid having a trial on the charge that Mr. Bode had somehow claimed the assets that were owned by his wife, the government presented a motion, which I think you would expect us to present, to stop the trial and to conduct further discovery, which is what we did. And then based on review of that discovery, we determined that we would not pursue charges against Mr. Bode concerning ownership of his wife's assets. And the rest of the case, though, was very much the same. As I mentioned... Your position is you deleted a little bit from it. Yes. Yes, Your Honor. With respect to counsel's claim, Mr. Lebeau's claims about restitution, I want to spend a couple minutes addressing that. Restitution to the bank, you know, because the bank was a direct victim of this crime, was mandatory. And there's no basis to conclude here that the bank had done anything in terms of participating in the fraud or had unclean hands, as in Lido's. But what about... I mean, this is an unusual case in that the related defendant, the lawyer, Schleyer, however he pronounces his name, was before a different judge. And the different judge says, boy, I've looked at the Lido's case. You know, this bank doesn't seem to come to this with clean hands. I'm not going to do this. So that's a fact. We respect Judge St. Eve, but we disagree with her opinion at the sentencing hearing. But it doesn't mean that no rational... I mean, we all admire Judge St. Eve, of course, as we admire Judge Gettleman and everybody else. But in a Strickland sense, if there is some from the way the government views it, then why don't you give that person that chance? I mean, the lawyer just sort of sailed by the issue, right? Well, Your Honor, the Strickland test has two prongs. Right. And obviously performance and prejudice. Right, right. Counsel can't be ineffective for failing to raise an argument that has no merit. There is no merit with respect to the argument that counsel makes. Because as I was saying, the bank is a direct victim of this fraud, and it's a mandatory... But you're not confronting the issue from Lido's, which is that, at least in that instance, Bank of America, which is actually some rather harsh language in this opinion, which I remember the bank was reckless, and it should have known about these bad mortgage loans and so on and so forth. And then the court says restitution for a reckless bank, a dubious remedy indeed. And so the question is, is this case governed by that rule? Yes, the bank's involved in all of this, but has it in some sense forfeited the right to restitution because of its own actions? No, Your Honor. The answer respectfully is no. I think during counsel's presentation, you mentioned that Lido's was a far cry from what happened here. The facts were very extreme in Lido's. And the facts were indeed very extreme. And Lido's, as Your Honor will recognize, there were a number of closings done over the span of, if I'm remembering correctly, one week by the same individual. And the reasoning in Lido's seems to be that the bank should have known that that had happened because it was the same personalities of the bank who were involved with the individual who participated in the closings. But contrast that with what happened here, where there was no unclean hands. For example, Mr. Lebeau intentionally omitted his outstanding personal obligations on his PFSs. There's no evidence that the bank knew or should have known about that. A bank witness testified then that the bank relied on what the defendant said on his PFSs, including his false representations about his assets and his liabilities, before they extended credit. The defendants in this case also provided a false narrative at, in order to obtain the forbearance agreement. They said that they were developing this parcel and the bank relied on this to its detriment in granting forbearance and then ultimately delaying the foreclosure process, which resulted in it having to sell the property at a far lower value than it had originally been purchased. Third. So, did anything ever happen to this property? Was it just sort of sitting there as a health club that was unsuccessful when all of these events were going on? Your Honor, ultimately the record indicates that, and this was in the testimony of bank officials, that there was a short sale. Right, the $307,000. A share of sale, rather, and $300,000. And then it remains vacant. But all this time that they were supposedly pursuing a zoning change with the City of Aurora, or they were saying, you know, we are developing, were any plans drawn up to create a multi-unit condo building? There was some testimony in the record, Your Honor, that some basic plans had been developed very early in the process. But beyond that step, there is nothing in the record to indicate that the defendants did anything further other than deceive the bank into thinking that they were engaged in this vast project and that they had obtained all of the approvals that were required to do this. And there is no evidence that the bank had any knowledge about this false narrative, or that it could have or should have had that knowledge. The bank witnesses testified that the defendants' actions in stalling the foreclosure proceedings, including these false representations about the status of their development and the status of their discussions and approval from the Aurora people, the bank witnesses testified that this was significant to the bank to enter into the forbearance agreement. All right, so I have a bone to pick with you, Mr. Rahman, which has to do with the materiality element. Because the government actually dissuaded the district court judge from including a materiality element in the instructions given to the jury. And not only that, but the government's brief does not even cite United States against Nader, which is relied on by the defendants, which is a case, if you go back and read it, in which the Supreme Court flatly says materiality of falsehood is an element of the federal bank fraud statute. It doesn't say subpart one or subpart two. It just says that. And the cases you cite in your brief all predate the Supreme Court's decision in Nader. So I don't understand that at all. And it seems to me that if the Supreme Court has told us that there should be a materiality instruction, then that's what we ought to do. Well, Your Honor, the district court didn't commit plain error by not instructing the jury on materiality. Well, that's a thin... If I may, Your Honor, what I was going to say is that it's our position that materiality is not required as a separate element. Why do you say that in light of what the Supreme Court said in Mr. Lebeau's brief? So when you sat down to write your brief, it's not that it was a secret. You didn't have to even go do original research. Mr. Lebeau's brief at page 14 explicitly relies on Nader for his argument that there should have been a materiality instruction. Well, as the record indicated at the pre-trial conference, Your Honor, the government's position was that there are two different prongs here. But why do you say that? I understand that was your position. I can even understand why you might say that. And if the Supreme Court had never decided Nader, maybe I would have agreed with you even. But I am not comfortable saying to the Supreme Court, even though you didn't draw a distinction between part one, knowingly or inexplicably executing the scheme, and part two, false or fraudulent pretenses, et cetera. If they want materiality to be an element, why don't we just go along with them? I mean, yes, you can default to plain error. Is this something that's so serious it requires attention from this court? Because I gather everybody agreed to the instruction. Yes, that's correct. But I expect more from the government. It seems like you should have at least dealt with Nader. You should have said, even though Nader said materiality is a factor, here are the reasons why we don't think it is for 1344, part one. And if there had been a paragraph or so in your brief addressing that, I would happily have read it. But it wasn't there. Instead, you rely on pre-Nader cases. It is true that we do rely on the pre-Nader cases. I don't have anything to add, except I will say again that our position when this case was tried and when the jury instructions were the 2012 pattern jury instructions was that there were two different prongs of section 1344. And we charged these defendants under the first prong, which is the scheme to defraud a financial institution prong. We believe there's a difference between those two prongs, as we've laid out in our brief. In essence, in a false statements case that's charged under the second prong, it's necessary to distinguish between lies that are material and lies that are not material. And the statute covers false statements that are capable of influencing a decision maker. It shouldn't be read to cover irrelevant or immaterial statements. The same risk is not there with respect to the first prong, the scheme to defraud prong. Although, of course, the Ninth Circuit has said that that has a materiality element in the comments to the pattern jury instructions. Yes, Your Honor. Under the revised instructions, that is correct. Our position is that even if a separate materiality element were appropriate, these instructions here were close enough and that the error was harmless. As the court found in Pribble, the definitions of scheme to defraud and intent to defraud encompass the concept of materiality. No separate instruction was required. I would add that the record is replete with harmless because the evidence heard by the jury overwhelmingly established materiality. No reasonable juror could have found, based on the facts presented, that the defendant's scheme was not capable of influencing the bank in their actions. In fact, there was lots of testimony concerning Mr. Lebeau's false statements on his PFSs and how that impacted the bank in its decision making on whether to award him the credit. And there was lots of testimony about the defendants making false statements on the status of the development and how that influenced the bank in extending forbearance and ultimately delaying foreclosure to their detriment. Ultimately, it's the government's position that the outcome of the trial would have been the same, even if the materiality element was required but was omitted. We would wrap up by saying that and he didn't object at any time. The judge specifically asks him, right? The judge raises the materiality point. Yes, Your Honor, because in our original set of jury instructions, we had included a materiality element, but by the time of the superseding indictment trial, we determined that there were four elements, not five. But then the judge has a conversation about that and then everybody says, yes, I agree. That's correct, Your Honor, and based on that, that's a waiver. Mr. Lebeau knowingly relinquished the right to an instruction that contained a separate materiality element. And that's the other holding of Nader, by the way, that you are necessarily relying on, which is that these kinds of instructional errors can be forfeited or waived because that was one of the issues the court took the case to decide. Your Honor, Your Honors, if there are no further questions, I wish to wrap up by saying the government respectfully requests that this court affirm the defendant's convictions and sentences. All right, I see none, so thank you very much. All right, Mr. Lovett, back to you. Thank you, Your Honors. I'm going to start by working my way backwards. I think it's problematic that the government, as Your Honor noted, dissuades the trial court from including the materiality element in the instruction. And then here now on appeal argues for waiver in plain error, right? There's two different things going on there, and especially in the context of an instruction relating to an element of the charge, which by omitting it, it's essentially lessening what the government has to prove. But what do you do about the fact that counsel says, yes, I agree, this is okay not to charge materiality? That's about as clear a waiver as I can imagine. What could that mean? That's something I, counsel obviously did not object to the lack of inclusion. It's more than not objecting. He's asking, do you agree with this? And he says, yes, I agree. It was counsel for Mr. Lebeau just said yes. It was Bodie's counsel that had more of a gloss on his comment. But in any event, I think, as Your Honor noted, the cases cited by the government for us dealt actually only with supervised release conditions and a failure to object to supervised release conditions at sentencing. The other case, Caguana, was an entrapment instruction. And despite the lack of the error being preserved and this court finding waiver, it actually went on to address the merits of the argument. So we'd submit it was plain error. And to Your Honor's point about subpart one of the bank fraud statute, it wasn't just Netter either. It was Omer out of the Ninth Circuit, Reynolds in this circuit, Williams in the Tenth Circuit, and then Del Campo in the Eleventh Circuit have all specifically found materiality So when you're trying a case and you tell the judge, yes, we agree, what's he supposed to do? I understand, Your Honor. That's hence why we're arguing plain error for this issue. It's in any event, I think you have to. And you didn't object to the instruction either. Well, trial counsel did it. And at this point, it's plain error. And because of the magnitude of something that ultimately goes to an element of the offense, I don't think that's something we can easily forgive. But there's lots of evidence, as Mr. Rahman pointed out, from the bank people saying, we relied on this. This was important to us. Words to that effect that are the kinds of things you look for, for materiality. Yes, Your Honor. And I would just note too that if you look at the instructions as a whole, something else talking about whether the concept was sufficiently placed before the jury, which is the ultimate issue, I don't think it was sufficiently alleged in the superseding indictment. And there's also the fact that the false statement charges would have had reference to materiality. They did have reference to materiality. So when you think about what the jury actually had at the critical moment, and assuming they're doing their diligence, the inclusion in one place and omission from another is probably not something that escaped their notice. In any event, I am running out of time. I just want to point real quick back on the Lido's issue. Respectfully, I don't mean it as a critique to the government to not have challenged the issue at Schleyer's sentencing hearing. But to now say that, well, there's no evidence, and Judge St. Eve was incorrect, when if you recall their comments at the time, Judge St. Eve considered Lido's, considered the facts of this case, and heard from both parties, including the non-objection from the government at that time. So after making that decision, she found it applicable. And again, as to the merits, they talk about, well, there's all these misrepresentations here, and there's criminality. Lido's deals with the sentencing issue, where someone's been found or admitted his guilt The issue is not. It's what the bank knew and when they knew it, and whether or not they're a victim within the meaning of the MRVA. And given that the only judge who's considered the question, when it's been brought, after hearing from the government, has found it, this bank not to be a victim. I don't really think it's even a close call for us to say that Mr. LeBeau, that there's a reasonable probability that the result would have stood. So with that, I'd ask that you remand for a new trial, alternatively a new sentencing hearing. Thank you for your time. Thank you. And Mr. Gutierrez? All right. Thank you very much then. Thanks to all counsel. We'll take the case under advisement.